**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donald MAZZANTI,\***
**Defendant–Appellant.**

**No. 90–1019.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1990.

Decided Feb. 19, 1991.

---

\* This appeal was consolidated for purposes of oral argument with *United States v. Taglia*, 925

F.2d 1031. Because the two appeals

Daniel W. Gillogly, Asst. U.S. Atty., Ronald S. Safer, Office of the U.S. Atty., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Rick Halprin (argued), Marc R. Kadish, Legal Services Center, Chicago, Ill., for defendant-appellant.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Donald Mazzanti seeks review of the district court's denial of his motion for a new trial on the ground of newly discovered evidence. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

Mr. Mazzanti is before this court for the second time. His convictions were affirmed in *United States v. Mazzanti*, 888 F.2d 1165 (7th Cir.1989) (*Mazzanti I*), *cert. denied*, —— U.S. ——, 110 S.Ct. 2167, 109 L.Ed.2d 497 (1990). While that appeal was pending, Mr. Mazzanti moved for a new trial because a government witness, Robert Blessing, had recanted part of his trial testimony.[1] The factual background of the case is recounted in *Mazzanti I*, 888 F.2d at 1167–68. We shall provide below only those facts necessary to place his current appeal in context.

Mr. Mazzanti and his confederates were charged in an eight-count indictment with various violations of the federal narcotics laws. Count I charged all defendants, including Mr. Mazzanti, with conspiring to possess with intent to distribute and to distribute cocaine. Mr. Mazzanti also was charged, in Counts II, III, V, and VII, with possession with intent to distribute and distribution of cocaine.

With respect to Count II, the government's evidence showed that Agent John Riley of the Drug Enforcement Administration (DEA) posed as a friend of Robert Blessing and went to the ABC Lounge in Streamwood, Illinois, on April 2, 1987. Blessing had arranged for Agent Riley to purchase two ounces of cocaine from Oscar DeLisle, one of the charged co-conspirators. When the two arrived, DeLisle told Agent Riley that the cocaine would be

---

raise different issues, we are issuing a separate opinion in each case.

1. *See* Fed.R.Crim.P. 33.

there within the hour. Another DEA agent, William Maloney, had been observing activity in the ABC Lounge prior to the arrival of Agent Riley and DeLisle. During that time, he had seen Mr. Mazzanti speaking with DeLisle. DeLisle and Mr. Mazzanti also conversed after Agent Riley and Blessing arrived and spoke with DeLisle. Agent Maloney then observed Mr. Mazzanti leave the lounge and get into the van of Paul Born, another co-conspirator. Agent Maloney also observed the van return to the bar. Mr. Mazzanti and Born reentered the bar and spoke with DeLisle, who had not left the bar in the interim. DeLisle motioned Agent Riley and Blessing to come to the rear of the bar; he then proceeded to another room and produced a clear plastic bag containing over fifty-five grams of cocaine. He gave Agent Riley the cocaine in exchange for $3,200.

Count III of the indictment was based on a similar transaction. On April 13, 1987, Agent Riley and Blessing drove to the ABC parking lot. DeLisle arrived in an orange van, which pulled up to the driver's side of Agent Riley's car. Blessing, who was in the driver's seat of Agent Riley's car, saw both Mr. Mazzanti and Born in the van. DeLisle came to Agent Riley's side of the car and informed him that he did not have the cocaine with him but that the orange van would return with the drugs. DeLisle also indicated that the parking lot was full of other customers awaiting the arrival of cocaine. DeLisle then entered the ABC Lounge. Later, the van returned with Born and DeLisle, and DeLisle gave Agent Riley over fifty-five grams of cocaine in exchange for $3,200.

Count V is based on the following evidence. A month later, on May 13, 1987, Agent Riley and Blessing went to DeLisle's home and met with DeLisle and Mr. Mazzanti in the basement of the house. DeLisle said that he did not have the drugs but that he would go out and get them. While Agent Riley was awaiting the delivery of another package of cocaine, he asked Mr. Mazzanti if the quality of the drugs would be any better than what he had already received. Mr. Mazzanti responded that they had a new source of the drugs and that Agent Riley would be extremely happy with them. A short time later, DeLisle returned and gave Agent Riley fifty-two grams of cocaine in exchange for $3,200. Mr. Mazzanti was present when this exchange occurred.

Count VII involves a multi-kilogram cocaine deal that was completed on July 13, 1987. Agent Riley negotiated the deal with co-conspirators Taglia and Westerman. Agent Riley initially told Taglia that he wanted $250,000 worth of drugs, and Taglia informed him that he could purchase approximately nine kilograms of cocaine for that sum of money. On July 13, Agents Riley and Maloney went to Taglia's condominium and offered to purchase $175,000 worth of cocaine. Taglia ultimately agreed to sell approximately six kilograms for that price. Westerman counted the money and checked to see whether the serial numbers were consecutive. The group then drove to a restaurant where the transaction was to take place. When they arrived, they were met by Mr. Mazzanti and DeLisle. Agent Riley asked Mr. Mazzanti if the quality of the cocaine that he was purchasing was good. Mr. Mazzanti responded that Agent Riley would be happy. Mr. Mazzanti stated that the cocaine should be coming at any moment and explained that he had to be careful what he was doing. He also stated that the cocaine would be delivered in a white paint bucket. Eventually, a maroon van arrived at the restaurant, and Mr. Mazzanti went over to it and took a white paint bucket from Paul Born. He placed this bucket in Blessing's car trunk and returned to the restaurant, where he handed Blessing his keys and told him that the package had arrived.

On July 7, 1989, after Mr. Mazzanti had been convicted and sentenced, the government informed him that Robert Blessing had recanted a portion of his trial testimony. Blessing had testified that, on July 10, 1987, while at the home of Born, he had seen Westerman hand a package containing a white substance to Taglia. In July 1989, Blessing informed the government that he did not see Westerman hand Taglia any package. The district court denied Mr. Mazzanti's motion for a new trial.

## II

## ANALYSIS

In this appeal, Mr. Mazzanti argues that the district court erred in refusing to grant him a new trial. He argues that Blessing was a key witness to establish the existence of the charged conspiracy and that only Blessing's testimony linked Mr. Mazzanti with the April 13, 1987 transaction that comprised Count III of the indictment. Mr. Mazzanti stresses that the jury had no idea that Blessing had lied during the investigation of the case. Moreover, the recanted testimony related to an act of the alleged conspiracy, the gathering of cocaine for the July 13th transaction. The fact that Blessing lied under oath regarding incidents of July 10, 1987 also calls in question, Mr. Mazzanti submits, the testimony of this witness regarding all other matters. He thus contends that, at the least, the district court should have granted him an evidentiary hearing to determine if Blessing had committed other perjury during the trial.

Finally, Mr. Mazzanti claims that, as a matter of public policy, a new trial ought to be granted. Relying on *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), Mr. Mazzanti argues that the government should not be permitted to sustain a conviction when the recanting witness is its own informant and when the government no longer vouches for the credibility of the witness.

In determining whether a new trial ought to be granted on the ground that newly discovered evidence discloses false trial testimony, this circuit has employed the test set forth in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928) (emphasis in original):

> [A] new trial should be granted when,
> (a) The court is reasonably well satisfied that the testimony given by a material witness is false.
> (b) That without it the jury *might* have reached a different conclusion.
> (c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.[2]

The government suggests that we abandon this controlling precedent and hold that a motion for a new trial on the ground of false testimony ought to be governed by the rule used for all other motions for a new trial based on newly discovered evidence. In these situations, "defendant[s] must show that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had defendants exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would *probably* lead to an acquittal in the event of a retrial." *United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982) (emphasis supplied).[3]

The difference between *Larrison* and the more general formulation has become, over the years, more and more elusive, and, as the court's opinion in *United States v. Van Daal Wyk*, 840 F.2d 494, 500 (7th Cir.1988), perhaps suggests implicitly, the differences in practical application are indeed becoming difficult to discern. While the growing difficulty in perceiving a difference in the cases might well justify a reexamination in a case in which the application of the tests would make a differ-

---

**2.** *See also, e.g., United States v. Leibowitz,* 919 F.2d 482, 484 (7th Cir.1990); *United States v. Olson,* 846 F.2d 1103, 1112 (7th Cir.), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988). In several recent cases, panels in this circuit have criticized or modified the *Larrison* test. *See, e.g., Leibowitz,* 919 F.2d at 485 (contending that third prong of *Larrison* test is dictum); *United States v. Van Daal Wyk,* 840 F.2d 494, 500 (7th Cir.1988) (indicating that prong two should be changed so that likelihood of different result must be more than remotely possible but less than probable); *United States v. Nero,* 733 F.2d 1197, 1202 (7th Cir.1984) (restating second prong to read: "That the jury

*might* have reached a different conclusion.'") (emphasis in original); *see also infra* note 6.

**3.** *Accord United States v. Van Daal Wyk,* 840 F.2d 494, 500 (7th Cir.1988).

Two circuits have rejected *Larrison* in favor of a probability standard, at least for situations in which "the government did not knowingly or negligently use the perjured testimony." *United States v. Krasny,* 607 F.2d 840, 844–45 (9th Cir. 1979), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *see also United States v. Stofsky,* 527 F.2d 237, 245–46 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d

ence, no such necessity presents itself today. In our view, a principled application of *Larrison,* the "more lenient"[4] of the tests, still requires affirmance of the district court.

In analyzing the evidence of record against the *Larrison* test, we must, of course, give great deference to the trial judge's assessment of the evidence and its probable impact on the jury's decision.[5] However, we do agree with the government that, in a case such as this one,

> where a material witness testified falsely about a matter with substantive value to the government's case ... an analysis that simply evaluates the effect of correcting the false testimony without evaluating the probable impact on the witness's credibility is too narrow. The essence of the "newly discovered evidence" is not limited to the substantive error in the record, but extends to the fact that the witness lied.[6]

Appellee's Br. at 24.

When we turn to an assessment of the evidence in this case, it is important to note, at the outset, that the false testimony pertained to a transaction that was not specifically charged or referenced in the indictment. Although the false testimony was probative as to whether the conspiracy existed, the testimony did not specifically implicate Mr. Mazzanti. Moreover, there was sufficient independent evidence—indeed overwhelming evidence—of the conspiracy's existence and of Mr. Mazzanti's participation in that conspiracy. Indeed, substantial independent evidence established his participation in all the possession counts brought against him with the exception of the transaction of April 13 alleged in Count III. With respect to that count, only Blessing's testimony places him at the site, and even Blessing indicated only that Mr. Mazzanti was at the site several hours prior to the actual transfer of drugs.[7] However, Blessing's testimony on this count is supported by the testimony of Agent Riley in all other material respects. Moreover, even if Mr. Mazzanti were not present, he would be liable, as a member of the conspiracy, under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

We also note that, although the district court acknowledged the impeachment value of the newly discovered evidence, the court concluded that Blessing's testimony had

---

80 (1976). The Third Circuit recently applied *Larrison* because the parties had agreed to the applicability of that case, but the court noted that the ·circuit had *not* adopted the *Larrison* test. *United States v. Massac,* 867 F.2d 174, 178 (3d Cir.1989). The viability of the *Larrison* test in the Fifth Circuit is questioned in *United States v. Nixon,* 881 F.2d 1305, 1311–12 (5th Cir.1989). A recent district court decision expresses doubt that the Eighth Circuit would follow *Larrison* today. *See United States v. Tierney,* 718 F.Supp. 748, 751–52 (W.D.Mo.1989). For cases following the *Larrison* test, see generally Annotation, *Recantation of Testimony of Witness as Grounds for New Trial—Federal Criminal Cases,* 94 A.L.R.Fed. 60, 66–67 (1990).

**4.** *United States v. Goodwin,* 770 F.2d 631, 639 n. 2 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986); *accord United States v. Olson,* 846 F.2d 1103, 1112 (7th Cir.), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988).

**5.** We review a district court's denial of a motion for a new trial on an abuse of discretion standard. *See United States v. Olson,* 846 F.2d 1103, 1112–13 (7th Cir.), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988).

**6.** Mr. Mazzanti also urges us to consider the possible effect that knowledge of Blessing's perjury might have on the jury. The different versions of prong two of the *Larrison* test should be noted. Under the original version of the test ("[t]hat without it, the jury *might* have reached a different conclusion"), a court considering a new trial motion is asked to determine simply whether the absence of the recanted testimony would have changed the outcome of the trial. The restated version ("[t]hat the jury *might* have reached a different conclusion") requires the court, in effect, to consider also whether a jury that knows that a material witness has lied would reach a different verdict.

During oral argument in this case, the government acknowledged that the original version of prong two of the *Larrison* test was different from that used in more recent cases. However, during the district court proceedings, the court implicitly indicated that it would have rejected the new trial motion even under the newer version of prong two: "Mr. Mazzanti ... [has] failed to show that the jury's verdict ... might even be different had the false testimony been known or had the testimony that was presented been known to be false...." Tr. of Dec. 19, 1989 at 4.

**7.** Before the district court rejected Mr. Mazzanti's new trial motion, the court indicated that, in

been subjected to significant other impeachment evidence. This assessment, in our view, deserves particular deference by an appellate court.

We do not believe that the district court abused its discretion in refusing to hold an evidentiary hearing to determine if other aspects of Blessing's testimony were false. As the court observed:

> Typically, if a person is going to admit they lied under oath, they are not going to make a half breast of it. But under these circumstances, I can't see what would be served by an even further examination, since the primary evidence against Mr. Mazzanti was the testimony of agents of the Government working under cover.

Tr. of Dec. 19, 1989 at 6. Mr. Mazzanti has offered no *specific* reasons why other aspects of Blessing's testimony are suspect, and we thus agree with the assessment of the district court.

Finally, we point out that, contrary to the defendant's suggestion, any analogy to *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), limps. As our colleagues in the Second Circuit have remarked:

> *Mesarosh* is a *sui generis* case involving "that rare situation where a key witness ... had been conceded by the government to have testified ... in such a bizarre fashion as to raise the inference that he was either an inveterate perjurer or a disordered mind."

*United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir.1975) (quoting *United States v. Rosner*, 516 F.2d 269, 279–80 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976)) (citation omitted), *cert. denied*, 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976). The only other situation we have found in which appellate courts have applied *Mesarosh* to require a new trial is typified by *Williams v. United States*, 500 F.2d 105 (9th Cir.1974). In that case, the court reversed the denial of habeas relief because the government witness at the original trial had later pled guilty to one count of a multi-count indictment that included perjury. *Id.* at 106. The court in *Williams* held that "[a] conviction based substantially upon tainted evidence cannot stand." *Id.* at 108. Mr. Mazzanti's conviction was not "based substantially upon tainted evidence."

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

sentencing Mr. Mazzanti, it had not considered his alleged presence several hours prior to the April 13 transaction.

\* This appeal was consolidated for purposes of oral argument with *United States v. Mazzanti,*