**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dwayne E. REED, Defendant–Appellant.**

**No. 92–2634.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1993.

Decided Feb. 17, 1993.

Chris R. Larsen, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, WI (argued), for United States of America, plaintiff-appellee.

Paul Barrett, Elkhorn, WI (argued), for Dwayne Reed, defendant-appellant.

Before FLAUM and MANION, Circuit Judges, and MILLER, District Judge.*

* Hon. Robert L. Miller, Jr. of the Northern Dis-

ROBERT L. MILLER, Jr., District Judge.

■ Dwayne Reed appeals the district court's denial of his motion for a new trial on two counts of bank robbery. At trial, after the government rested its case-in-chief, in which two of the confessed robbers testified that Mr. Reed was a co-participant, Mr. Reed called FBI Special Agent Daniel Craft to the stand to ask about the FBI's use of photospreads to obtain the identification of Mr. Reed by an accomplice who knew Mr. Reed only by nickname and surname. Agent Craft was asked what "you" did; after the trial, it was learned that Agent Craft had described what other agents did, as well. Mr. Reed sought a new trial on the basis of the newly discovered evidence concerning the nature of Agent Craft's testimony. We affirm the district court's denial of that motion.

Fed.R.Crim.P. 33 states that a trial court "may grant a new trial ... in the interests of justice." The Rule does not define "interests of justice" and courts have had little success in trying to formulate a general standard. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989). Nevertheless, courts have interpreted Rule 33 to require a new trial in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights. *Id.*

■ In determining whether a new trial should be granted on the ground that newly discovered evidence discloses false testimony, this circuit has employed the test set forth in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928), and modified in *United States v. Mazzanti*, 925 F.2d 1026, 1030 n. 6 (7th Cir.1991), and *United States v. Nero*, 733 F.2d 1197 (7th Cir.1984). Under this test, a new trial should be granted when:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) The jury might have reached a different conclusion absent the false testi-

trict of Indiana, sitting by designation.

mony or if it had known that testimony by a material witness was false.

(c) The party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*United States v. Mazzanti*, 925 F.2d at 1029; *United States v. Nero*, 733 F.2d at 1202; *Larrison v. United States*, 24 F.2d at 87–88. Although it has been suggested that Rule 33 motions based on the discovery of false testimony should be governed by the stricter standards applicable to new trial motions based on newly discovered evidence generally, *see United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982), this circuit has continued to assume that *Larrison* applies. *United States v. Mazzanti*, 925 F.2d at 1029–30; *see also United States v. Leibowitz*, 919 F.2d 482, 484 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991); *United States v. Olson*, 846 F.2d 1103, 1112 (7th Cir.), *cert. denied,* 488 U.S. 850, 109 S.Ct. 131, 102 L.Ed.2d 104 (1988); *United States v. Nero*, 733 F.2d at 1202. A district court's denial of a motion for a new trial is reviewed for abuse of discretion. *United States v. Olson*, 846 F.2d at 1112–13.

We agree with the district court that Agent Craft's testimony, while perhaps incomplete, was not materially false. We further find that the district court did not abuse its discretion in finding no likelihood that the jury with complete testimony would have reached a different conclusion.

### A. Falsity

Agent Craft's direct examination proceeded as follows with respect to the photographic identification procedure:

A: When we had interviewed John Ross at the time of his arrest and he told us about Dwayne Reed, G–Bo, we had checked with the Milwaukee Police records and there were several Reeds but with different spellings, REED and REID and so forth. And so we pulled all of the pictures of the different Reeds, and John Ross identified the picture of Dwayne Reed as being G–Bo and the person who accompanied him and Frank Simmons at the banks.

Q: Did you show Mr. Reed a photospread?

A: There were several pictures of Reeds, yes.

MR. BARRETT: I would ask that this be marked as the next exhibit, 22 for identification purposes.

Q: Is this the picture that was eventually identified as Mr. Dwayne Reed by Ross?

A: Yes.

Q: Okay. And this was one of the series of pictures that you showed Mr. Ross?

A: Yes.

Q: All right. Now, this wasn't what you meant by a photo array though. This wasn't where you took six or seven black males of similar size and height and everything and then asked a suspect or a person to pick out a suspect; was it?

A: No. Generally you use photospreads or photo arrays with witnesses or victims. When you're dealing one on one with a subject talking about another subject—

Q: Excuse me, were you finished?

A: No.

Q: Okay.

A: —generally I'll just show them one picture if that's all I have if it's a subject. We're not looking at a witness or a victim. But in this particular case John was shown several pictures to try to identify G–Bo.

Q: Which Reed, he was trying to identify which Reed; is that correct?

A: Correct.

Q: But he was not—you were not asking him to pick out Dwayne Reed from a photo array; is that correct?

A: That's correct.

(Tr. 116–17.)

After trial, Mr. Reed's counsel received a letter from the Assistant United States Attorney indicating that Agent Craft did not intend to imply through his testimony that

he personally showed Mr. Ross the photographs, but that Milwaukee Police detective William Guy had displayed the photographs and told Agent Craft what had happened. After Mr. Reed moved for a new trial, the government submitted Agent Craft's affidavit, which explained that the testimony was intended to confirm that the picture of Mr. Reed was among the photographs shown to Mr. Ross by Detective Guy and later shown to Mr. Ross by Agent Craft to confirm Mr. Ross' identification of Dwayne Reed.

Mr. Reed notes that Agent Craft uses the words "I'll" and "I" at some points during his testimony. He contends that this indicates that Agent Craft understood defense counsel to be using the word "you" in its singular, not plural, form, and that Agent Craft was aware that his answer would be ambiguous and incomplete. Agent Craft, however, used the terms "I" and "I'll" when referring to the procedures he generally follows. When referring specifically to the procedures followed in Mr. Reed's identification, Agent Craft consistently used the ambiguous "you", the plural "we", or the passive voice: *e.g.*, "We're not looking at a witness or a victim. But in this particular case John was shown several pictures to try to identify G–Bo."

In retrospect, Agent Craft's admittedly unclear and perhaps incomplete use of the term "we" ("and so we pulled all of the pictures of the different Reeds"), might have triggered a clarifying question from defense counsel. Nonetheless, the testimony was not false.

Mr. Reed argues that the *Larrison* standard should be applied to answers which are accurate but incomplete. To adopt such a standard would make every incomplete cross-examination—or even ineffective cross-examinations ground for a new trial. Agent Craft accurately answered the questions as he understood them. The oath to tell the whole truth does not preclude a witness from being misunderstood or require witnesses to volunteer information beyond that perceived to be sought by the questioner.

## B. Possibility of Different Outcome

During deliberations, the jury asked the age of one confederate and also asked to have portions of Agent Craft's testimony concerning John Ross' identification of Dwayne Reed read back to them. At the judge's request, the court reporter restated the confederate's age and read the entirety of Special Agent Craft's testimony to the jury. Forty minutes later, the jury returned guilty verdicts as to both counts.

Mr. Reed speculates that the jury must have considered Agent Craft's testimony important, but he can do no more than speculate. Ample evidence indicated that Mr. Ross knew Mr. Reed. Who presented Mr. Reed's photograph to Mr. Ross appears to be a matter of minor importance: the circumstances surrounding the identification were not part of the government's case-in-chief; no evidence of record suggests that Mr. Ross did not identify Mr. Reed's photograph; nothing in the record suggests that the proper agent would have described the identification procedure any differently than did Agent Craft. The jury's request presents some suggestion that the jury thought it important, but that suggestion is weakened significantly by recognition that the jury first requested to have virtually all of the trial testimony reread.

Under *Larrison*, 24 F.2d at 87–88, a court looks to whether the absence of the recanted testimony would have changed the outcome. The district court, which heard all the evidence and observed the witnesses, concluded that "there is nothing before the court to suggest that the jury might reach a different conclusion as to Mr. Dwayne Reed's guilt or innocence" if the proper agent had testified to the identification. This court can find no abuse of discretion in that ruling.

In *Mazzanti*, 925 F.2d at 1030 n. 6, we noted that the present version of the *Larrison* test's second prong also requires the court to consider whether the jury would have reached a different result had the jury known that a material witness had lied. Assuming that the inaccuracy of Agent Craft's testimony had been brought

out at trial, nothing in the record suggests that the jury's verdict would have differed.

Agent Craft testified during the course of the defendant's case-in-chief. The government did not rely on Agent Craft's testimony to prove Mr. Reed's guilt. As the district court noted, nothing in the record suggested "that the jury in any sense based its verdict in the final analysis on Special Agent Craft's testimony." Revelation of Detective Guy's role only would have impeached Agent Craft's testimony on a collateral item of evidence not relied upon by the government to prove its case. The introduction of such evidence is not of the type which might cause a jury to reach a different conclusion and, accordingly, does not constitute grounds for a new trial. *United States v. Nero*, 733 F.2d at 1204; *see also United States v. Lockhart*, 956 F.2d 1418, 1426–1427 (7th Cir.1992).

For the foregoing reasons, the denial of the motion for new trial is AFFIRMED.