78 F.3d 587
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rene C. MARTINEZ, Defendant-Appellant.
 No. 94-2825.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 5, 1995.
Decided Feb. 22, 1996.
 
 Before FAIRCHILD, CUDAHY and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 The present appeal was taken by Rene Martinez from an order denying him a new trial. Martinez has been convicted of second degree murder of Charles Sammons, a fellow inmate at a federal correctional institution. We affirmed his conviction. U.S. v. Martinez, 988 F.2d 685 (7th Cir.1993). That opinion describes the factual background, pages 688 and 689.
 
 
 2
 This is a successive appeal under this court's operating procedure 6(b), and the original panel retained it. After consideration of appellant's statement of reasons why oral argument should be heard, the panel is unanimously of the opinion that oral argument is not needed because the facts and legal arguments are adequately presented and the decisional process would not be significantly aided.
 
 
 3
 The motion for a new trial concerned the testimony of Inmate Cummings. As mentioned on page 688, "Inmate Cummings also testified that both Martinez and Garcia were 'rolling' Sammons while Noel stabbed him." Though not recounted in the opinion, he also testified that when Noel arrived at the fight, "He told the officer to get the fuck out of here before he got killed too." He also testified that before Noel came over and stabbed Sammons he heard one of the two, Martinez or Garcia, say "stab this motherfucker."
 
 
 4
 Obviously, Cummings' testimony would support the finding that Martinez (as well as Garcia) assisted Noel in killing Sammons, knowing that Noel was using deadly force. As will be seen, however, there was other evidence supporting that finding.
 
 
 5
 After the trial Martinez became aware (we are not told exactly how) that inmates Meyers and Rodriguez were willing to say that Cummings was not present at the fight and thus could not have observed that to which he had testified. Their affidavits were obtained in March 1992.
 
 
 6
 Meyers swore that he was with Cummings in the TV room when they heard about the fight on the B side. They headed for the door, but were turned back by officers and "Neither ... ever made it to the B side to see what had happened." Rodriguez swore that he saw the fight start and did not see Cummings in the area; Rodriguez went into his cell near the fight, locked his door and looked through it; "Cummings was not there." The next day Rodriguez heard Cummings asking other inmates the details of what had happened.
 
 
 7
 After completion of the appellate process, Martinez moved for a new trial on the ground of newly discovered evidence. Judge Shabaz denied the motion, concluding that with due diligence counsel could have discovered the Meyers and Rodriguez evidence prior to trial; that Cummings' credibility had been impeached at trial and additional impeaching evidence would be cumulative; and that "absent any testimony by Cummings, defendant Martinez would have been convicted of second degree murder beyond a reasonable doubt."
 
 
 8
 We shall reverse a district court's denial of a motion for a new trial based on newly discovered evidence--only if the district court has abused its discretion. We approach such motions with great caution and are wary of second-guessing the determinations of both judge and jury. It is well-established that a defendant must satisfy a stringent multi-stage test to justify a new trial on the basis of newly discovered evidence. The defendant must demonstrate that the evidence at issue: (1) came to the defendant's knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial."
 
 
 9
 U.S. v. Hubbard, 22 F.3d 1410, 1423 (7th Cir.1994), quoting United States v. DePriest, 6 F.3d 1201, 1216-17 (7th Cir.1993) (internal citations omitted).
 
 
 10
 (1) Due Diligence.
 
 
 11
 The fight which resulted in Sammons' death occurred April 27, 1991. Defendants were indicted June 19, 1991. Counsel was assigned July 9. On August 15, the government supplied defense counsel with the names of 14 inmates (Cummings among them) who had "apparently viewed at least part of the assault." A defense investigator interviewed inmates at Oxford (including Meyers and Rodriguez) September 19 and 26. He did not ask them about Cummings, believing he "had no reason to do so," although presumably aware of the government's disclosure of August 15. His affidavit also said he interviewed a person who identified himself as Cummings, but was not the same person who testified at the trial.
 
 
 12
 On October 10 the government supplied defense counsel with a number of documents, including a report of an April 29, 1991 interview with Cummings. Cummings told of coming out of the TV room when the fight broke out; and of seeing Noel arrive while Martinez and Garcia were holding Sammons down and hitting him; that "Noel then went to [Sammons] as Martinez and Garcia rolled [Sammons] to his side. Noel then went to sticking him with the pick 5 to 6 times in the back and spine area."
 
 
 13
 Trial had been set for November 18 with the provision that an indigent defendant must file a motion for service of subpoena by October 31. Thus there were three weeks between the time defense counsel was alerted to Cummings' statement and the deadline for subpoenaing witnesses. Defense counsel emphasizes the difficulty of interviewing possible witnesses in this case. There were 52 inmates of B wing. More than ten had been transferred or released. Information concerning their whereabouts was not provided until October 3. The defense investigator needed to interview these people, all over the United States, as well as other preparation for trial. He evidently contends that new interviews concerning Cummings' ability to observe were excused because of the difficulty of completing interviews of all inmates.
 
 
 14
 Martinez agrees that ordinarily a denial of a motion for new trial based on newly discovered evidence will be reversed only if there is an abuse of discretion. He points to minor flaws in Judge Shabaz' memorandum decision as mistakes of facts rendering this deference inapplicable.
 
 
 15
 One related to the date when the government informed the defense that Cummings was a witness to the encounter. Although August 15, 1991 was correctly stated as the date on page 1 of the memorandum decision, it was incorrectly stated "as early as August 1, 1991" on page 3. The difference, doubtless inadvertent, was of little importance. Either date was long before the September interviews at Oxford, at which the investigator failed to inquire about Cummings' opportunity to observe the fight. The other was the assertion that after the government provided Cummings' statement, the defense "had another month to discover evidence which could contradict the statement of Cummings." Martinez argues that the defense had only three weeks before the October 31 deadline for seeking a subpoena. More than five weeks, however, remained before trial; presumably an extension of the deadline could be secured for good cause. We do not consider any inaccuracy as to time significant.
 
 
 16
 (2) Impeachment.
 
 
 17
 Judge Shabaz' memorandum pointed out that the Meyers-Rodriguez testimony would not establish an element of guilt or innocence, but would impeach Cummings. There had been other impeachment. This was doubtless a reference to Cummings' admissions of convictions of felony and of a government promise to move him to a safer location and make his cooperation known to his sentencing judge.
 
 
 18
 Martinez points out that the Meyers-Rodriguez proposed testimony would be impeachment of a different character or degree from the impeachment offered at trial. If a jury believed Meyers and Rodriguez, it would necessarily disregard Cummings' testimony as a lie. Martinez argues that the ordinary rule on newly discovered evidence which is impeaching should not be "woodenly" applied. He cites two district court decisions in which a new trial was ordered because of newly discovered evidence tending to impeach a witness. United States v. Atkinson, 429 F.Supp. 880 (E.D.N.C.1977) and United States v. Lipowski, 423 F.Supp. 864 (D.N.S.1976). In Atkinson, however, the trial judge thought the new evidence "probably" would have avoided a conviction, p. 887. In Lipowski, the trial judge expressed his strong feeling that the additional impeaching evidence could have made the difference concerning a principal witness' credibility and, if so, "would have almost assuredly resulted in a different verdict by the jury." p. 867. The trial judge in this case did not have that view of the Meyers-Rodriguez evidence.
 
 
 19
 (3) Probability of an acquittal.
 
 
 20
 Judge Shabaz was emphatic in indicating his opinion that Martinez would have been convicted in the absence of Cummings' testimony. We find no abuse of discretion.
 
 
 21
 Originally there was a fistfight between Sammons and Martinez. Garcia came to the aid of Martinez and Brown to the aid of Sammons. Noel then joined in. When additional officers arrived, they observed Martinez and Garcia continually punch out Sammons and Brown. The latter were then on the floor, offering no resistance. Noel had a shank or knife with a six to eight inch blade. He held it up and yelled at the officers to stay back. The officers demanded that Noel drop the shank, but Noel stabbed Sammons 27 times and Brown five. Noel yelled at the officers "When we're through with him you can have him." Martinez and Garcia switched back and forth between the two victims as they continued to kick and beat them. Inmate Margiotta testified that while Noel stabbed Sammons, Martinez held him down and continually struck him in the face. Officer Williams testified that he observed either Garcia or Martinez "uncurl" or "open" Sammons as Noel stabbed him. See 988 F.2d at 688-89.
 
 
 22
 Inmate Anderson testified that Martinez and Garcia had Sammons on the floor and were beating him with their fists. Garcia slammed Sammons' head into the wall, and after that Martinez kicked Sammons a few times. At that point Sammons was offering no resistance.
 
 
 23
 Judge Shabaz, who heard and saw all the witnesses, thought that the absence of the Cummings testimony could not have made a difference in the verdict. We have only the bare record before us, but are comfortable in concluding that an acquittal would be improbable even if the jury had heard Meyers and Rodriguez.
 
 
 24
 Martinez has not argued that Larrison v. United States, 24 F.2d 82, 87-88 (7th Cir.1928) requires a new trial here. See U.S. v. Mazzanti, 925 F.2d 1026, 1029 (7th Cir.1991) and U.S. v. Severson, 49 F.3d 268, 271 n. 1 (7th Cir.1995). The first requirement of Larrison is that the court is reasonably well satisfied that the testimony given by a material witness is false, and that requirement is not fulfilled in this case, even though Meyers and Rodriguez, if believed, would establish that Cummings' testimony was false.
 
 
 25
 The denial of the motion for new trial is affirmed.