In the

# United States Court of Appeals

### For the Seventh Circuit

_____

Nos. 06-3572 & 06-3659

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VISHNU BENDER and TONY JOHNSON,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 04 CR 17—**Richard L. Young**, *Judge.*

_____

ARGUED SEPTEMBER 13, 2007—DECIDED AUGUST 13, 2008

_____

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Vishnu Bender and Tony John-
son were convicted of conspiracy to distribute cocaine,
cocaine base, and marijuana stemming from their in-
volvement in a drug-distribution network operating
between Chicago and Evansville, Indiana. Bender chal-
lenges the sufficiency of the evidence of a conspiracy and
also claims he was denied his counsel of choice in viola-

tion of the Sixth Amendment. Johnson argues the district court improperly denied his motion for a new trial. That motion was premised on an alleged violation of the district court's witness-sequestration order. In support of the motion, Johnson submitted a letter from a jail inmate who claimed to have overheard some of the coconspirator-witnesses discussing the case in their jail cell and expressing a willingness to lie in order to get reduced sentences.

We affirm. The evidence of Bender's involvement in the charged drug conspiracy was overwhelming and included the usual array of intercepted telephone conversations, drug-seizure evidence, and extensive testimony from coconspirators regarding Bender's role in maintaining the wholesale flow of drugs from Chicago to Evansville. Regarding the Sixth Amendment claim, the attorney Bender wanted to represent him declined to do so once alerted by the government to a possible conflict of interest. Moreover, by the time of trial, the attorney's law license was suspended as a consequence of his own conviction on a drug charge. There was no Sixth Amendment violation.

Finally, Johnson's argument about an alleged violation of the sequestration order is misplaced. The court's order was entered pursuant to Rule 615 of the *Federal Rules of Evidence*, which permits the trial court to exclude witnesses from the courtroom "so that they cannot hear the testimony of other witnesses." There is no evidence suggesting that any of the coconspirator-witnesses conveyed the substance of their testimony to one another. Regardless, only one of the witnesses the inmate-informant allegedly

overheard discussing the case in the jail actually testified about Johnson's involvement in the conspiracy; the testimony of the others pertained to Bender only. Johnson had ample opportunity at trial to cross-examine this witness about his motives and incentives for testifying.

## I. Background

Bender and Johnson were indicted as a result of a coordinated federal, state, and local drug investigation centering on Evansville, Indiana. The original indictment named ten defendants. It alleged that in 2003-2004 Bender, operating out of Chicago, supplied large quantities of cocaine, cocaine base, and marijuana to Emanuel Cabell and Dennis Turner in Evansville, who in turn redistributed the drugs to Johnson, Eric McKinney, Jesha Fox, Ebon Green, John Culley, Andrew Owen, and Demarco Lane, all of whom resold the drugs to users in Evansville. The defendants were charged with conspiracy to distribute cocaine base, powder cocaine, and marijuana in violation of 21 U.S.C. §§ 841 and 846. All except Johnson and Bender pleaded guilty.

Bender was initially represented by appointed counsel but early on in the case retained Attorney David Scacchetti to represent him. Before Scacchetti entered an appearance, however, the government informed the district court that Scacchetti was then representing Robert Lee Johnson, another participant in the Evansville conspiracy, and that the dual representation might pose a conflict because Robert Lee Johnson might be added as a defendant by superseding indictment and also might eventually testify

against Bender.[1] The court instructed Scacchetti to look into the potential conflict. The next day, Scacchetti advised the court that he had a conflict of interest and could not represent Bender. At the next status conference, Bender indicated that Scacchetti had withdrawn from his case but was assisting him in finding new counsel. Bender protested, however, that he did not understand the conflict. The following month Scacchetti was charged with possession of cocaine and voluntarily closed his law practice. A few months later—before the trial in this case commenced—Scacchetti pleaded guilty and agreed to a two-year suspension of his law license.

At the start of trial, the district court entered an order excluding witnesses from the courtroom during the testimony of other witnesses pursuant to Rule 615 of the *Federal Rules of Evidence*. At trial the jury heard testimony regarding the operation of the conspiracy from state and local law enforcement officers, agents of the Drug Enforcement Administration ("DEA"), and some of the coconspirators. The law enforcement officers and DEA agents testified that they observed Johnson sell drugs to an undercover informant and obtained wiretaps of conversations between Bender, Johnson, and other coconspirators. They testified that the intercepts indicated extensive use of code words by the conspirators in an effort to conceal their drug transactions. Coconspirator Dennis Turner, Bender's cousin, testified that Bender regularly sold large quantities of cocaine to him on credit

---

[1]  Robert Lee Johnson is not related to defendant Tony Johnson.

and delivered the drugs through intermediaries for resale in Evansville. Fox, Lane, and Culley corroborated this testimony and also confirmed the agents' testimony about the meaning of the coded language heard on the wiretap intercepts. Fox also testified to receiving quantities of cocaine from Johnson for resale in Evansville. The jury found both defendants guilty.

Prior to sentencing, Johnson received a letter from Henry Hibbs, an inmate at the Henderson County Detention Center. In the letter Hibbs asserted that while sharing a holding cell at the jail, Culley, McKinney, Fox, and Lane had discussed the case and their desire to reduce their prison exposure and specifically indicated that they would say "whatever it takes" to get reduced sentences. Johnson moved for a new trial pursuant to Rule 33 of the *Federal Rules of Criminal Procedure*, arguing that Hibbs's letter was evidence that the witnesses had violated the court's sequestration order and expressed a willingness to lie on the witness stand.

The district court denied the motion, concluding there was no evidence that any witness had relayed the substance of his or another witness's testimony, and therefore no evidence of a violation of the sequestration order. The court noted that only Culley, Fox, and Lane had testified at trial, and that Culley and Lane did not testify to any facts pertaining to Johnson. The court concluded that to the extent the information in Bibbs's letter constituted "new evidence," it was cumulative because the coconspirator-witnesses had been fully cross-examined on their motives and incentives to testify. Finally, the court held

that the evidence against Johnson was overwhelming, so the information in Bibbs's letter could not possibly have made a difference in the outcome. The court sentenced Johnson and Bender to the statutory mandatory term of life in prison.

## II. Analysis

### A. Sufficiency of the Evidence

Bender argues that the evidence at trial established only his involvement in a buyer-seller relationship, not a conspiracy to distribute drugs. This argument is often made but rarely successful. Our review is highly deferential; we view the evidence in the light most favorable to the government, and the jury's verdict must be upheld if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Albarran*, 233 F.3d 972, 975 (7th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A defendant's involvement in the distribution of large quantities of drugs—while itself not sufficient to establish a drug conspiracy—suffices to prove a conspiracy when combined with other evidence, such as: (1) standardized transactions, (2) sales on credit, (3) a continuing relationship, and (4) an understanding that the drugs would be resold. *United States v. Adkins*, 274 F.3d 444, 450 (7th Cir. 2001).

Here, the evidence was sufficient for the jury to conclude that Bender was involved in the charged drug-distribution conspiracy. Among other things, the govern-

ment's case included Turner's testimony about the large quantities of drugs Bender sold; the evidence that Bender sold the drugs to Turner on credit; and the frequency of Bender's large-quantity sales. We have held that selling drugs on credit is especially indicative of a conspiracy because it gives the seller a stake in the buyer's successful resale of the drugs. *United States v. Ferguson*, 35 F.3d 327, 331 (7th Cir. 1994) ("the repeated 'fronting' of cocaine, alone, has been held sufficient to support the jury's conclusion that the defendant had knowingly joined a distribution conspiracy").

Moreover, coconspirator Cabell testified that he acted as a "runner" for the Evansville drug conspiracy, delivering cocaine from Bender to Turner but having Turner pay Bender directly. This demonstrates both standardized transactions between Bender and Turner and the use of a regular runner, both telltale markers of involvement in a conspiracy. *United States v. Payton*, 328 F.3d 910, 911 (7th Cir. 2003) ("Milton testified that he worked as a 'runner' for his son's crack operation . . . . This testimony alone is sufficient evidence of a distribution conspiracy.").

Bender does not directly challenge this evidence. He argues instead that it shows nothing more than a series of sales between buyer and seller. To the contrary, the conspiracy evidence was abundant—including repeated sales of large drug quantities on credit, standardized transactions over a sustained period of time, and use of a runner—and easily sufficient for a rational jury to convict him.

**B. Sixth Amendment Claim**

An element of the right to counsel under the Sixth Amendment is "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). The right is not unlimited, of course. The "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151 (citing *Wheat*, 486 U.S. at 159, & *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). Also, a defendant may not "insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation." *Id.* at 152 (citing *Wheat*, 486 U.S. at 159-60)). A violation of the Sixth Amendment right to counsel of choice is a structural error and not subject to harmless-error analysis. *Id.* at 149-50. Bender contends the district court erroneously disqualified Scacchetti from representing him based on a potential conflict of interest that never materialized. We review a district court's disqualification of counsel for abuse of discretion. *See Wheat*, 486 U.S. at 164.

The main problem with Bender's argument is that the district court never actually disqualified Scacchetti. Although Scacchetti initially agreed to represent Bender, he never entered an appearance and withdrew after concluding that his joint representation of Bender and coconspirator Robert Lee Johnson would create a conflict of interest. That the government raised the conflict question and the court prompted the conflict inquiry is immate-

rial. That the potential conflict never ripened into an actual conflict is likewise immaterial.[2] Bender suggests he should have been given the opportunity to waive the potential conflict of interest, but as we have noted, the right to counsel of choice does not include the right to force the court to give effect to a waiver of a conflict of interest. *Gonzalez-Lopez*, 548 U.S. at 152; *Wheat*, 486 U.S. at 159-60. Here, the potential for conflicting interests was present; Scacchetti himself determined he could not undertake the joint representation and on that basis declined to represent Bender.

In any event, by the time of trial Scacchetti was no longer a member of the bar in good standing. His license to practice law had been suspended in connection with his own drug conviction, and therefore he could not have represented Bender. Although a denial of the Sixth Amendment right to counsel of choice is a structural error not susceptible to analysis for its prejudicial effect on the outcome of trial, there can be no violation of the right if the defendant's "counsel" of choice is not licensed to practice law. *See Gonzalez-Lopez*, 548 U.S. at 152; *Wheat*, 486 U.S. at 159.

---

[2] Robert Lee Johnson was not added as a defendant in this case and did not testify against Bender; he was separately indicted and convicted for his involvement in the Evansville drug conspiracy.

### C. Alleged Violation of Sequestration Order

Johnson challenges the district court's denial of his motion for a new trial. The motion was based on alleged "new evidence," specifically the letter from Henry Bibbs, an inmate in the local jail who claimed to have over-heard Fox, Culley, McKinney, and Lane talking about the case in a holding cell. Without giving specifics, Bibbs asserted that these coconspirator-witnesses said they would do "whatever it takes," including lie, to get reduced sentences. Johnson argued that this violated the court's sequestration order and was grounds for a new trial.

The district court denied the motion, concluding that (1) Bibbs's letter did not say the witnesses had relayed the substance of their testimony to each other and was therefore not evidence of a violation of the sequestration order; (2) the alleged "new evidence" was merely im-peaching and cumulative, as Johnson and Bender had extensively cross-examined the witnesses about their motivation to lie; and (3) any error was harmless, given the overwhelming evidence of Johnson's guilt.

A district court's denial of a Rule 33 motion for a new trial is reviewed for abuse of discretion. *United States v. Reed*, 2 F.3d 1441, 1451 (7th Cir. 1993). As a threshold matter, we share the district court's skepticism that Bibbs's letter is evidence of a violation of the sequestra-tion order. The sequestration order excluded witnesses from the courtroom so they could not hear and conform their testimony to that of other witnesses. *See* FED. R. EVID. 615. This evidentiary and procedural precaution is de-signed to curb collusion by witnesses but does not address

the separate problem of witnesses who coordinate their stories before testifying. Bibbs's letter is entirely general, but he appears to be alleging that the coconspirators discussed the case in the jail before trial and shared their desire to give the sort of testimony that would be most likely to secure reduced sentences in their own cases. Bibbs did *not* say that they conveyed the substance of their testimony to one another. Bibbs's letter does not establish a violation of the sequestration order.

Nor does it establish grounds for a new trial. To win a new trial based on newly discovered evidence, the defendant must show that "'the evidence (1) came to [his] knowledge only after the trial; (2) could not have been discovered sooner and [he] exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial.'" *Reed*, 2 F.3d at 1451 (quoting *United States v. Van Daal Wyk*, 840 F.2d 494, 500 (7th Cir. 1988)) (alteration in original). A motion for a new trial premised on an allegation of false testimony is subject to a more focused analysis that asks whether:

> (a) [t]he court is reasonably well satisfied that the testimony given by a material witness is false[;]

> (b) [t]he jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false[; and]

> (c) [t]he party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial."

*Id.* (internal quotation marks omitted); *see also United States v. Reed*, 986 F.2d 191, 192-93 (7th Cir. 1993); *United States v. Mazzanti*, 925 F.2d 1026, 1029 (7th Cir. 1991).

Johnson failed to carry his burden on either of these inquiries. His assertion that the coconspirators lied is entirely general. He makes no effort to identify which specific portions of their trial testimony may have been false. Only Fox testified about Johnson's involvement in the conspiracy; the others testified about Bender, not Johnson. The allegations in Bibbs's letter cannot possibly carry the weight Johnson puts on them; their context and content do not come close to establishing to the "reasonable satisfaction" of the court that the coconspirator witnesses gave materially false testimony.

We also agree with the district court that the purported "new" evidence would not have influenced the jury's verdict. First, the evidence against Johnson, like that against Bender, was overwhelming, consisting of (among other evidence) Johnson's intercepted phone conversations as well as the coconspirator testimony. Second, the coconspirators were vigorously cross-examined about the motivations and incentives for their testimony, including their desire to obtain reduced sentences. Bibbs's letter, even if accepted at face value, would have been cumulative impeachment evidence, generally insufficient to warrant a new trial. *Reed*, 2 F.3d at 1451. Finally, there is no indication that Johnson was unaware or surprised that there was reason to suspect the coconspirators' motives for testifying. That is almost always the case, and indeed, as we have noted, their motivations were thoroughly

tested by cross-examination here. The district court was well within its discretion to deny Johnson's motion for a new trial.

AFFIRMED.