**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 28, 2012[*]
Decided September 10, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-3316

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:08-cr-0087-bbc-2 |
| COREY J. THOMAS, *Defendant-Appellant*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Corey Thomas appeals from the district court's denial of his motion for a new trial based on what he calls newly discovered evidence, namely a codefendant's declaration that Thomas is innocent. Because this declaration does not satisfy the standard for a new trial under Federal Rule of Criminal Procedure 33, we affirm the district court's judgment.

---

[*] The United States moved for an order of non-involvement in this appeal, which was granted. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Following a jury trial, Thomas and a codefendant, Prince Beck, were convicted of bank robbery, *see* 18 U.S.C. §§ 2113(a), (d), conspiracy to commit bank robbery, *see id.* § 371, and use of a firearm in connection with a crime of violence, *see id.* § 924(c)(1)(A)(ii). The government charged that Thomas and Beck were part of a five-person conspiracy, and its case against the pair rested heavily on the testimony of two other codefendants, Michael Simmons and Lamar Liggons, who each pleaded guilty to one count and agreed to cooperate. Simmons and Liggons testified that in May 2008 they robbed the US Bank in Blooming Grove, Wisconsin, along with three others: Thomas, Beck, and another codefendant, Jarrell Murray. (Murray is the one who now asserts that Thomas is innocent.)

The government also presented other evidence against Thomas and Beck. Thomas's fingerprints were found on a bag of kitchen gloves recovered from the getaway van—the robbers wore these gloves into the bank—and he purchased a car one day after the robbery using more than $6,000 in $100 bills. (These bills could not, however, be conclusively tied to the bank.) Beck also paid cash for a car just after the robbery, and the jury heard recordings of phone conversations between Beck and Simmons in which they made coded but obvious references to having recently committed a lucrative crime. The defense theory was that Simmons and Liggons falsely implicated Thomas and Beck to protect the actual culprits. Thomas and Beck's convictions were affirmed in *United States v. Beck*, 625 F.3d 410 (7th Cir. 2010).

Throughout the trial proceedings, neither Thomas nor Beck sought testimony from codefendant Murray. Murray's case had been severed from theirs because he chose to challenge his competence to stand trial, but his competence was eventually established, and he then pleaded guilty to the bank robbery. Murray now swears in an affidavit that, although he was one of the five who robbed the bank, Thomas and Beck were not involved. Murray adds that the five true offenders, most of whom he does not name, agreed to blame Thomas and Beck because the offenders were all friends.

In the district court, Thomas argued that Murray's affidavit is "newly discovered evidence" that justifies a new trial. *See* FED. R. CRIM. P. 33. The district court denied Thomas's motion, explaining that Murray's testimony does not qualify as newly discovered evidence under Rule 33 because his account is incomplete, implausible, and fails to undermine the evidence of Thomas's guilt. We review the district court's decision for abuse of discretion. *See United States v. Taylor*, 600 F.3d 863, 869 (7th Cir. 2010).

On appeal Thomas maintains that Murray's affidavit is indeed newly discovered evidence. He points out that it was not written until after his trial, and he contends that he had no way of obtaining a statement from Murray before or during trial because the court was evaluating Murray's competence. Thomas also argues that Murray's version of events,

if presented to a jury, would likely lead to acquittal because it supports the defense theory that Thomas and Beck were sacrificed to protect others.

We agree with the district court that Murray's affidavit does not qualify as newly discovered evidence. When a defendant moves for a new trial based on testimony from a witness who did not previously testify, the motion will be granted only if (1) the defendant learned of this evidence after trial, (2) the defendant could not have discovered the evidence sooner through the exercise of due diligence, (3) the evidence is material (not merely cumulative or impeaching), and (4) the evidence would probably lead to acquittal if presented at a new trial. *Taylor*, 600 F.3d at 869; *United States v. Bender*, 539 F.3d 449, 455–56 (7th Cir. 2008).

We first focus on the second factor, which is missing here. Thomas knew all along that Murray was charged with participating in the bank-robbery scheme and therefore could be expected to know who was *not* involved. But despite knowing that testimony from Murray could support his defense, Thomas did not attempt to subpoena Murray. Had Thomas sought to compel Murray's testimony, Murray might have resisted on Fifth Amendment grounds, but Thomas was nonetheless required to make the effort if he hoped to show due diligence. *See United States v. Kamel,* 965 F.2d 484, 493 (7th Cir. 1992) ("If there is possible evidence which would exonerate a defendant, he may not simply ignore it. . . ."). Furthermore, Thomas's lack of diligence is not excused because Murray challenged his competence to stand trial. Incompetence to stand trial is not necessarily incompetence to testify. *Compare Drope v. Missouri*, 420 U.S. 162, 171-72 (1975) (competence to stand trial requires an ability to understand the proceedings and assist counsel) *with United States v. Gutman*, 725 F.2d 417, 420 (7th Cir. 1984) (competence to testify requires an ability to tell the truth and understand the oath witnesses take); *see also United States v. Barnes*, 30 F.3d 575 (5th Cir. 1994) (no error in district court's finding that defendant was competent to stand trial but incompetent to testify). What is more, the government moved to delay Thomas's trial until the issue of Murray's competence could be resolved—which would have nullified Thomas's concern—but Thomas objected to the proposed delay. And he objected even though he was already serving a prison sentence for an unrelated crime, meaning that a delay would not have increased the length of his incarceration.

Thomas's lack of diligence is enough to doom his motion, *see Taylor*, 600 F.3d at 869–70, but we also conclude that a jury would be unlikely to acquit based on Murray's statement. For one thing, Murray purports to exonerate Beck as well as Thomas even though Beck made self-incriminating statements on tape. Additionally, other than naming Simmons and himself, Murray declines to identify the other three "real" perpetrators, and this omission also undercuts the credibility of his statement, particularly when it is weighed

against the evidence of Thomas's guilt. Thus, the district court did not abuse its discretion by denying Thomas's motion.

The judgment of the district court is AFFIRMED.