United States Court of Appeals
Fifth Circuit

**F I L E D**

July 15, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 03-50627

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALLEN BLACKTHORNE,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before SMITH, WIENER and
    BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Allen Blackthorne appeals the denial of his second rule 33 motion seeking a new trial on the basis of newly discovered evidence. *Cf.* FED. R. CIV. P. 33. Because the evidence is immaterial to Blackthorne's guilt or innocence, we affirm.

I.

Blackthorne was convicted and sentenced to two life sentences for conspiring to commit interstate murder-for-hire, a violation of 18 U.S.C. § 1958, and for causing another to commit interstate domestic violence, a violation of 18 U.S.C. § 2261(a)(1) and 2(b). Both charges were in connection with the 1997 murder of Blackthorne's ex-wife, Sheila Bel-

lush, at her home in Florida.[1]

The facts underlying Blackthorne's conviction are set forth at length in our prior opinion, so we do not repeat them here. Briefly stated, the government's theory of the case (as supported by the evidence) is that Blackthorne and Danny Rocha, a bookie and golf companion, conspired to arrange the hired murder of Bellush. Using Blackthorne's money and Rocha's criminal contacts, they were able to secure the involvement of Sammy Gonzales and Joey del ToroSSthe latter of whom traveled from Texas to Florida and murdered Bellush in her home. Blackthorne, in contrast, maintains that he is innocent, that the murder was part of a conspiracy to blackmail him, and that he was implicated in the murder only to reduce the conspirators' culpability once the blackmail efforts failed.

The government proved its case in partial reliance on the testimony of Gonzales and Rocha, but neither side called del Toro to testify. Blackthorne relies on that fact to argue that statements del Toro made in a recent civil deposition constitute newly discovered evidence favorable to the defense. Blackthorne raised those arguments in a rule 33 motion, which the district court denied without holding an evidentiary hearing.

## II.
### A.

We review the denial of a motion for new trial only for abuse of discretion. *United States*

---

[1] Blackthorne appealed those convictions, along with the denial of his first rule 33 motion, and this court affirmed in an unpublished opinion. *See United States v. Blackthorne*, No. 00-51256, 37 Fed. Appx. 88 (5th Cir.), *cert. denied*, 537 U.S. 1104 (2003).

*v. Gresham*, 118 F.3d 258, 267 (5th Cir. 1997). Such motions are not favored and are viewed with great caution. *Id; see also United States v. Jamarillo*, 42 F.3d 920, 924 (5th Cir. 1995).

This court applies the 'Berry' rule to motions for a new trial on the basis of newly discovered evidence. *United States v. Freeman*, 77 F.3d 812, 816 (5th Cir. 1996) (citing *Berry v. Georgia*, 10 Ga. 511 (1851)). To receive a new trial, Blackthorne must show

(1) that the evidence is newly discovered and was unknown to him at the time of trial; (2) that the failure to discover the evidence was not due to his lack of diligence; (3) that the evidence is not merely cumulative, but is material; and (4) that the evidence would probably produce an acquittal.

*Gresham*, 118 F.3d at 267. "Unless all four elements are satisfied, the motion for new trial must be denied." *Id*.

### B.

The evidence Blackthorne relies on is immaterial to his guilt or innocence. It therefore cannot form the basis for a new trial.[2] *Id.* at 267-68.

### 1.

The first of two categories of evidence Blackthorne cites consists of statements in del Toro's deposition indicating that he lacked an intention to kill Bellush when he traveled to Florida. In his deposition, del Toro claimed he was convinced to join the conspiracy only after hearing allegations that Bellush abused her

---

[2] As a result, we express no opinion whether del Toro's deposition even constitutes newly discovered evidence.

children, and that he resolved to confirm those allegations before deciding whether to kill her.

Blackthorne contends that this undermines the basis for his conviction of conspiracy to commit murder-for-hire because it narrows the class of persons with whom he could have conspired to kill Bellush. He reasons that del Toro's state of mind at the time of travel precludes a finding that he joined the conspiracy and, as a result, forces the government to rely exclusively on a theory that Blackthorne conspired with Rocha. This weakens the government's case, Blackthorne argues, because Rocha has repudiated his trial testimony and is unlikely to implicate Blackthorne in a new trial.

The elements of conspiracy to commit federal murder-for-hire under § 1958 are "(1) an agreement by two or more persons to achieve the unlawful purpose of [interstate] murder-for-hire; (2) the defendant's knowing and voluntary participation in the agreement; and (3) an overt act committed by any one of the conspirators in furtherance of the conspiratorial object." *United States v. Hernandez*, 141 F.3d 1042, 1053 (11th Cir. 1998).[3] Thus, to carry its burden the government needed to show only that Blackthorne conspired with one other person to commit interstate murder-for-hire, and it succeeded in proving that Ro-

---

[3] *See also United States v. Razo-Leora*, 961 F.2d 1140, 1144 (5th Cir. 1992) (detailing, in a murder-for-hire case, the elements of a 18 U.S.C. § 371 conspiracy as "(1) an agreement between the defendant and one or more other persons to violate a law of the United States; (2) an overt act by one of the conspirators in furtherance of the conspiracy; and (3) the intent on the part of the defendant to further an unlawful objective of the conspiracy").

cha was that other person. Proof of del Toro's involvement in the conspiracy is therefore extraneous to Blackthorne's culpability.

Neither is the government's case weakened by evidence that leaves it unable to show that Blackthorne directly conspired with del Toro, because that was never its theory to begin with. Rather, the government relied on evidence that showed Blackthorne knew only Rocha among the conspirators and was kept at arms' length from the communications with Gonzales and del Toro. So, the weaker case Blackthorne would ascribe to the government is in fact the very same one it used to convict him in the first place.

Blackthorne relies on Rocha's subsequent recantation to argue that the government would be less sure of proving his connection to Rocha at a new trial, but that same claim was already the subject of a rule 33 motion that was denied on the merits and appealed to this court on procedural grounds only. Blackthorne therefore has waived all challenges to the district court's determination that Rocha's recantation is not enough to warrant a new trial. *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

Although a fair assessment of whether a new trial "would probably produce an acquittal,"[4] requires the court to place all the evidence in its proper context, Blackthorne cannot obtain a new trial exclusively on the basis of evidence that was already the subject of appeals.[5] Those proceedings ended with the con-

---

[4] *Gresham*, 118 F.3d at 267.

[5] In addition to Rocha's recantation, Blackthorne relies on evidence that this court, on direct

(continued...)

clusion that Blackthorne was not entitled to a new trial, and that view is not the least bit diminished by new evidence that has no tendency to undermine the verdict reached at trial. Were our view otherwise, a rule 33 motion could be made on the basis of any inconsequential fact not previously known to the defendant, with the ultimate goal's being nothing more than the renewed litigation of claims previously denied.

Even assuming, *arguendo*, that the government had to prove del Toro's participation in a conspiracy with Blackthorne,[6] it still could do so comfortably in spite of the evidence Blackthorne relies on. Whatever del Toro's state of mind at the time he entered Florida, he ultimately manifested his intention to join the conspiracy when he entered Bellush's home, killed her, and asked Gonzales for the money Rocha had promised him. It is of no consequence that del Toro might have joined the conspiracy after the point at which some overt acts occurred, because "one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of conspirators, made after the formation and in furtherance of the conspiracy." *United States v. Barksdale-Contreras*, 972 F.2d 111, 114 (5th Cir. 1992) (quoting *United States v. Cintolo*, 818 F.2d 980 (1st Cir. 1987)).

Finally, to the extent Blackthorne argues that the evidence is exculpatory because it sug-

gests that *del Toro* might not have committed an *interstate* murder-for-hire because he traveled to Florida without the "intent that a murder be committed," § 1958, the evidence is still immaterial to Blackthorne's conviction for conspiracy. It is well established that a conspiracy and the related substantive offense are distinct crimes and that the government need not prove the successful completion of the latter to obtain a conviction for the former.[7] Even where a conviction for the substantive offense of federal murder-for-hire fails for want of interstate travel, a defendant can be convicted of conspiring to commit the offense. *See United States v. Hernandez*, 141 F.3d 1042, 1052-53 (11th Cir. 1998). As a result, this evidence is immaterial to Blackthorne's conviction of conspiracy.

The evidence concerning del Toro's state of mind is also immaterial to Blackthorne's conviction of interstate domestic violence under § 2261(a)(1) and 2(b). Section 2261(a)(1) makes it a crime for a person to (1) cross state lines or enter or leave Indian country; (2) with the intent to injure, harass, or intimidate that person's spouse or intimate partner; and (3) in the course of or as a result of that travel, intentionally commit a crime of violence and thereby cause bodily injury to such spouse or intimate partner. § 2261(a)(1).[8] Additionally, § 2(b) makes Blackthorne liable as a principal for del Toro's actions if he caused them and if

---

[5](...continued) appeal, determined should have been excluded.

[6] Del Toro and Blackthorne may be involved in a single conspiracy despite not knowing each other's identities. *United States v. Payne*, 99 F.3d 1273, 1279 n.6 (citing *Blumenthal v. United States*, 332 U.S. 539, 556-57 (1947)).

[7] *See United States v. Contreras*, 950 F.2d 232, 240-41 (5th Cir. 1991); *United States v. Romeros*, 600 F.2d 1104, 1105 (5th Cir.1979) (per curiam).

[8] We assume, without deciding, that Bellush qualifies as a spouse or intimate partner within the meaning of the statute, because Blackthorne has not raised any arguments to the contrary in either of his appeals.

the same actions "directly performed by [Blackthorne] would be an offense against the United States." § 2(b).

The new evidence tends to suggest that del Toro did not "travel[] across a State line . . . with the intent to injure," as § 2261(a)(1) requires, but that fact does not exculpate Blackthorne. Under § 2(b), "only the person charged need have the criminal intent, the individual whom the defendant has caused to perform the act may be entirely innocent." *United States v. Levy*, 969 F.2d 136, 141 (5th Cir. 1992).[9] Whatever del Toro's intentions, the newly discovered evidence does not cast doubt on the jury's conclusion that Blackthorne caused del Toro to travel to Florida, that he intended thereby to injure Bellush, and that he succeeded in that objective. As a result, this first category of newly discovered evidence is immaterial to Blackthorne's guilt or innocence on either count and cannot form the basis for a new trial.

2.

The second category of newly discovered evidence consists of del Toro's statements to the effect that he and Gonzales were under the influence of cocaine throughout the period in which the crime was planned, including during a key meeting between themselves and Rocha. The evidence is not material.

Insofar as Blackthorne argues that Gonzales's substance abuse denied him the mental capacity to join the conspiracy, the evidence could not affect Blackthorne's guilt, because his participation in the conspiracy is sufficiently established by the agreement with Rocha. Even assuming, *arguendo*, that Gonzales was not a co-conspirator, Blackthorne and Rocha still agreed with one another to kill Bellush, and they sent del Toro to Florida to achieve that purpose. Because this evidence also does nothing to undermine the jury's conclusion that Blackthorne and Rocha conspired with one another to commit interstate murder-for-hire, it too is incapable of absolving Blackthorne of liability for the conspiracy.

Blackthorne also suggests that the evidence contradicts Gonzales's testimony at trial, where he admitted to cocaine use, but only in lesser quantities. That argument is unavailing, because the extent of Gonzales' cocaine habit does not directly relate to Blackthorne's culpability, but instead serves only to attack the veracity of Gonzales as a witness. Blackthorne's argument fails, therefore, because "evidence which merely discredits or impeaches a witnesses' testimony does not justify a new trial." *United States v. Pena*, 949 F.2d 751, 758 (5th Cir. 1991).

Worse still, the evidence is cumulative. Though Blackthorne now thinks his lawyer did an inadequate job of cross-examining Gonzales, the jury nevertheless was exposed to evidence that Gonzales used cocaine during the relevant time period. For that reason as well, a new trial is not warranted. *See United States v. Villarreal*, 324 F.3d 319, 325 (5th Cir. 2003).

III.

Blackthorne contends that the district court

---

[9] *See also United States v. Smith*, 584 F.2d 731, 734 (5th Cir. 1978) ("Section 2(b) removes all doubt that one who puts in motion or assists in an illegal enterprise or causes the commission of an indispensable element of an offense by an innocent agent or instrumentality, is guilty. . . . It is not necessary for the intermediary to have a criminal intent."); *United States v. Shear*, 962 F.2d 488, 493 n.6 (5th Cir. 1992) (same).

abused its discretion in denying his motion without an evidentiary hearing. "Refusal of a hearing on a motion for new trial is [] reviewed for abuse of discretion." *United States v. Reedy*, 304 F.3d 358, 371 n.17 (5th Cir. 2002) (citing *United States v. Metz*, 652 F.2d 478, 481 (5th Cir. Unit A Aug. 1981)).

"Generally, a motion for new trial may be decided upon affidavits without evidentiary hearing," *Metz*, 652 F.2d at 481, but that view is commonly justified on a ground that is inapplicable here: the trial judge's previously acquired familiarity with the evidence. *See, e.g., United States v. MMR Corp.*, 954 F.2d 1040, 1046 (5th Cir. 1992).[10] Blackthorne succeeded in having the judge recused from considering his rule 33 motion, so the court lacked the personal knowledge that can ordinarily substitute for an evidentiary hearing.

Nevertheless, on the facts of this case, the court did not abuse its discretion in denying the hearing. Because the district court correctly determined that the proffered evidence was immaterial, there was no need to conduct a hearing to determine whether the evidence was reliable.[11]

_____

[10] *See also United States v. DiPaolo*, 835 F.2d 46, 51 (2d Cir. 1987) ("The need for a hearing is diminished when, as here, the judge observed the demeanor and weighed the credibility of the witness at trial."); *United States v. Olson*, 989 F.2d 229, 233 (7th Cir. 1993); *United States v. Provost*, 969 F.2d 617, 620 (8th Cir. 1992).

[11] *See United States v. Hausman*, 894 F.2d 686, 688 (5th Cir. 1990) (finding that the district court did not abuse its discretion in denying evidentiary hearing on rule 33 motion, because even if the defendant could prove his claims, they were immaterial to guilt or innocence).

AFFIRMED.