# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 30, 2007**

Charles R. Fulbruge III
Clerk

No. 07-40029
Summary Calendar

DOUGLAS O'NEILL

Plaintiff-Appellee

v.

SEARIVER MARITIME, INC.

Defendant-Appellant

Appeals from the United States District court for the Southern District of
Texas, Galveston Division
3:05-CV-425

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

SeaRiver Maritime, the defendant-appellant, now appeals the district court's adverse findings of fact, and denial of two trial motions. We AFFIRM.

## FACTS

Douglas O'Neill, the plaintiff-appellee, was a seaman for SeaRiver. He began a tour aboard the MEDITERRANEAN, which picked up loads of crude oil in Qatar and Oman for delivery in Japan. O'Neill's job was to gauge and sample

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the cargo tanks. During the voyage, the amount of hydrogen sulfide vapors rose to dangerous levels, i.e., 200 parts per million or greater. Douglas O'Neill suffered permanent injuries including severe headaches, memory and breathing problems. O'Neill was diagnosed with decreased respiratory function caused by the heightened levels of hydrogen sulfide. O'Neill was also diagnosed with brain damage primarily decreased concentration, personality change, and short-term auditory memory impairment. He was unable to return to work as a result of his neurological damage and any further contact with hydrocarbons would cause severe asthma attacks. O'Neill sued SeaRiver in federal court. The district court found SeaRiver liable for negligence under the Jones Act, 46 U.S.C. § 688, and for unseaworthiness. The court also found the plaintiff 20% negligent "for not more aggressively providing for his own safety." The district court found O'Neill had sustained $800,000 in damages, yielding an award of $600,000 due to O'Neill's contributory negligence. The court later corrected its judgment to provide for an award of $640,000. SeaRiver now appeals the trial court's findings of fact below and its treatment of two trial motions.

## ANALYSIS

SeaRiver asserts an error in the trial court's findings of fact as to causation: whether O'Neill's injuries were caused by a harmful level of hydrogen sulfide exposure of 200 parts per million ("ppm") or more. We review a district court's judgment's findings of fact under a clearly erroneous standard. In re Mid-South Towing Co., 418 F.3d 526, 531 (5th Cir. 2005). SeaRiver appeals the denial of its motion to exclude O'Neill's medical causation expert. We review the trial court's admission or exclusion of expert testimony under an abuse of discretion standard. Pipitone v. Biomatrix, Inc., 288 F.3d 239, 243 (5th Cir. 2002). SeaRiver also appeals the district court's denial of its motion for a new trial. We review denial of a motion for new trial for abuse of discretion. United States v. Blackthorne, 378 F.3d 449, 452 (5th Cir. 2004).

1. District Court Did Not Clearly Err in Finding Heightened levels of Hydrogen Sulfide Caused O'Neill's Medical Problems

SeaRiver contends that O'Neill never proved he was exposed to hydrogen sulfide at 200 ppm or greater. "We recognize that scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 670 (5th Cir. 1999) (internal quotations and citations omitted). We have not required the plaintiff to show the precise level of toxic chemicals to which they were exposed. Id. at 671. Circumstantial evidence can be used to establish injurious exposure and the proof necessary to establish causation is "relatively lenient." Slaughter v. Southern Talc Co., 949 F.2d 167, 172 (5th Cir. 1991). The standard for causation in Jones Act cases is "very light." Martin v. John W. Stone Oil Distributor, Inc., 819 F.2d 547, 548 (5th Cir. 1987) (quoting Landry v. Two R. Drilling Co., 511 F.2d 138, 142 (5th Cir. 1975)). Under this deferential standard of review, we cannot find that the district court clearly erred in concluding that O'Neill was exposed to hydrogen sulfide at 200 ppm or at greater levels. In Oman, O'Neill saw a plum of vapor when he was gauging and sampling. An expert witness provided an opinion that a vapor at that location would have been greater than 200 ppm. O'Neill also presented evidence that he was exposed to the toxic levels at the location most susceptible to high concentrations, and just two days later a reading of 200 ppm was gauged in the same area, along with readings of 100 ppm in other parts of the ship.

In addition, many of the crew-members, including O'Neill, were beset with symptoms consistent with exposure to high levels of hydrogen sulfide. The appellant also appeals the district court's finding of causation. The appellant contends the district court engaged in improper "post-hoc" reasoning whereby the court inferred the source of injury from O'Neill's symptoms alone. When the

symptoms appear close in time to the alleged injury, this court has recognized symptoms as circumstantial evidence of the link between the alleged source and the injury if "there is an established scientific connection between the exposure and illness or other circumstantial evidence supporting the causal link." Curtis, 174 F.3d at 670. In this case, expert witnesses establish the scientific connection between the symptoms and the exposure to toxic hydrogen sulfide levels. As stated earlier, there is other circumstantial evidence supporting the causal relationship, including the readings of 200 ppm or greater around the ship.

We cannot say that under the Jones Act's lenient standards for causation and the highly deferential clear error standard, the district court clearly erred in concluding that a greater than 200 ppm existed when O'Neill was exposed to the hydrogen sulfide and that it was the cause of his injuries. The same analysis would apply to the seaworthiness claim.

2. The District Court did not abuse its discretion in admitting the testimony of the plaintiff's expert witness

We are also highly deferential to district courts in their decisions to admit or exclude expert testimony. See Watkins v. Telsmith, 121 F.3d 984, 988 (5th Cir. 1997) ("District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal unless manifestly erroneous.") (internal quotations omitted). SeaRiver appeals its denial of its motion to exclude Dr. James Dahlgreen, the plaintiff's expert witness. SeaRiver argues on appeal that Dr. Dahlgreen's testimony was unreliable, because he failed to exclude possible alternate causes, ignored evidence of no harmful exposure, and engaged in post-hoc reasoning. SeaRiver relies primarily on Black v. Food Lion, Inc., 171 F.3d 308, 313-14 (5th Cir. 1999). In Food Lion, Inc., we reversed the trial court's admission of an expert, because he engaged in post-hoc reasoning when establishing a cause of injury without eliminating other possibilities. Id. at 314.

Food Lion did not invalidate the use of symptoms or evidence of an effect to prove cause; instead, Food Lion approved the exclusion of an expert who establish cause from effect without identifying a scientific basis for his determination. See Id. ("The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops and knows what factors cause the process to occur. Based on such predicate knowledge, it may then be possible to fasten legal liability for a person's disease or injury."). Unlike Food Lion, the plaintiff's expert in this case did establish the critical scientific predicate for the cause-and-effect relationship by detailing the symptoms and physiological effects caused by exposure to high levels of hydrogen sulfide. Concluding O'Neill's symptoms as consistent with that scientifically established cause-and-effect relationship, the expert testimony cannot be considered manifestly unreliable. In addition, the evidence of the symptoms was used in connection with other circumstantial evidence that O'Neill and other crew-members were exposed to high levels of hydrogen sulfide. See Curtis, 174 F.3d at 670.

The appellant also contends the plaintiff's expert was unreliable, because he failed to exclude possible alternate causes. The plaintiff's expert did recognize several of the causes in his report, but noted that these potential "causes" occurred during his childhood and ruled them out in his report. Moreover, reviewing the record, the appellee's expert did have a chance, during cross-examination, to address the alternative causes and provided reasons why they were not relevant to his conclusions. His diagnosis, affirmed in cross-examination, was sufficiently reliable. See In re Paoli Ry. Yard PCB Litigation, 35 F.3d 717, 761 (3rd Cir. 1994) ("Thus, to avoid exclusion of his or her opinion, [the experts] did not have to conduct every possible test to assess whether his or her view was correct so long as he or she employed sufficient diagnostic

techniques to have good grounds for his or her conclusion that the plaintiff's illness was caused by PCBs."). We do not find the admittance of this evidence manifestly erroneous, and the admittance, even if erroneous, was likely harmless. See Guy v. Crown Equipment Corp., 394 F.3d 320, 324 (5th Cir. 2004).

3. The District Court Did Not Abuse its Discretion in Denying SeaRiver's Motion For a New Trial

We usually do not consider a trial court's denial of a motion, because he wants to enforce local rules, as an abuse of discretion. Victor F., by Gene F. v. Pasadena Ind. School Dist., 793 F.2d 633, 635 (5th Cir. 1986). We also do not find an abuse of discretion when the trial judge denied SeaRiver relief from clerical mistake. SeaRiver cannot point to any evidence that it sent the transcript order form to the Clerk's Office. See Riley v. City of Jackson, Miss., 99 F.3d 757, 761 (5th Cir. 1996). While the trial court judge relied on a debatable ground for dismissing the motion for a new trial, any error would be harmless, because the trial judge assessed the merits of the appellant's motion. He concluded that he would have denied the motion even if procedural errors did not bar his consideration. Since the trial judge did have an opportunity to assess the merits, any error in the denial based on procedural grounds is harmless. Cf. Ellison v. Conoco, Inc., 950 F.2d 1196, 1206 (5th Cir. 1992).

For the foregoing reasons, we AFFIRM.